# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRENDA L. QUANSTROM,**

        **Plaintiff,**

**v.**                                             **Case No:   6:15-cv-990-Orl-37GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

---

# REPORT AND RECOMMENDATION

Brenda L. Quanstrom (the "Claimant") appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for Supplemental Security Income ("SSI") from February 28, 2001 through August 3, 2011.   Doc. No. 1; R. 1190-1204, 1221-24.   This appeal marks Claimant's fourth request for reversal and remand from a final decision regarding the claim at issue.   *See generally* Doc. No. 15 at 1-4 (joint memorandum detailing procedural history of Claimant's SSI claim).   In short, prior to April 13, 2015, the date of the final decision at issue in this appeal, the Commissioner failed to issue a decision supported by substantial evidence on the claim at issue.[1]   Claimant argues that the Administrative Law Judge (the "ALJ") erred by failing to apply the appropriate legal standards to the medical opinion evidence regarding Claimant's mental impairments and, therefore, the ALJ's findings with respect those impairments are not supported by substantial evidence.   Doc. No. 15 at 12-33.   Claimant requests a remand for an award of benefits, arguing that the Commissioner's

---

[1] Claimant has also successfully appealed from a subsequent final decision of the Commissioner related to the period after August 3, 2011.   *See Quanstrom v. Comm'r Soc. Sec.*, No. 3:14-cv-546-BJD-JRK, Doc. No. 19 (M.D. Fla. July 24, 2015).   Although that claim is not at issue here, it bears mentioning that the Commissioner also failed to issue a final decision supported by substantial evidence as to that SSI claim by the Claimant.

fourteen (14) year delay in issuing a decision supported by substantial evidence as to her claim amounts to an injustice.   Doc. No. 15 at 35-38.   For the reasons set forth below, it is **RECOMMENDED** that the case be **REVERSED and REMANDED for an award of benefits**.

I.   **BACKGROUND**.

In order to illuminate the alleged errors at issue and to evaluate the injustice Claimant alleges she has suffered during the past fourteen years, it is necessary to review the procedural history of Claimant's claim.   On February 28, 2001, Claimant filed an application for SSI benefits alleging an onset of disability as of April 8, 2000.   R. 90-94.   Claimant alleged disability primarily due to bipolar disorder and degenerative disc disease of the lumbar spine.   R. 35.   Claimant's application was denied initially and upon reconsideration.   R. 32-35.   In making the initial and reconsideration level determinations, the Commissioner considered the April 27, 2001 and July 25, 2001 non-examining mental residual functional capacity assessments (the "MRFC") and psychiatric review techniques (the "PRT") of Drs. Patricia A. Boger, Ph.D., a psychologist who performed a review of Claimant's treatment records in the year 2000, and Janice H. Miller, a clinical psychologist, who reviewed medical records up to June of 2001.   R. R. 360-62 (Dr. Boger's MRFC), 364-76 (Dr. Boger's PRT), 378-80 (Dr. Miller's MRFC), 382-94 (Dr. Miller's PRT).[2]

On November 22, 2002, the first hearing was held before ALJ Franklin D. Holder (R. 59), but a transcript of that hearing is not in the administrative record.   On January 29, 2003, ALJ Holder issued a decision finding Claimant not disabled (the "First ALJ Decision").   R. 39-47.   In

---

[2] Drs. Boger and Miller each opined that Claimant is assessed with an affective disorder, an anxiety disorder, and a borderline personality disorder.   R. 360, 364, 378, 382.   Dr. Boger ultimately opined that Claimant has few functional limitations and is capable of completing routine tasks with limited social interaction.   R. 362.   Similarly, Dr. Miller opined that Claimant has few functional limitations and is capable of performing simple tasks in a well-structured environment and in a setting with low social demands.   R. 380.

the First ALJ Decision, the ALJ gave substantial weight to the opinions of Drs. Boger and Miller. R. 46.   Claimant requested review of the First ALJ Decision and, on April 25, 2003, the Appeals Council entered an order vacating the First ALJ Decision and remanding the case to ALJ for further proceedings (the "First Remand").   R. 31A.   In the First Remand, the Appeals Council found that the ALJ failed to adequately evaluate Claimant's obesity and, at step-four of the sequential evaluation process, the ALJ failed to explain how an individual with Claimant's assessed mental limitations could perform Claimant's past-relevant work.   R. 66-67.   On remand, the Appeals Council directed the ALJ to give further consideration to the Claimant's residual functional capacity (the "RFC") in comparing it to the demands and duties of Claimant's past-relevant work. R. 67.

On July 26, 2004, ALJ Holder held a second hearing.   R. 570-870.   On October 5, 2004, ALJ Holder issued a decision finding Claimant not disabled (the "Second ALJ Decision").   R. 18-31.   The Appeals Council denied Claimant's request for review (R. 16) and, on June 5, 2005, Claimant filed a complaint in the District Court, alleging that the ALJ's decision was not supported by substantial evidence.   *Quanstrom v. Barnhart*, No. 6:05-cv-824-Orl-JGG, Doc. No. 1 (M.D. Fla. June 2, 2005).   On April 3, 2006, the Commissioner filed an unopposed motion to remand the case to the Commissioner for further consideration of Claimant's mental impairments and obesity, and their effect on Claimant's ability to perform the demands of her past-relevant work or other work in the national economy.   *Id*. at Doc. No. 19.   On April 5, 2006, judgment was entered, remanding the case to the Commissioner for further proceedings (the "Second Remand").   R. 648. On May 24, 2006, the Appeals Council entered an order remanding the case to the ALJ for further proceedings consistent with the Court's judgment.   R. 653-54.   In its order, the Appeals Council noted that ALJ Holder failed to comply with its instructions in the First Remand.   R. 653.

On October 19, 2006, a third hearing was held before ALJ John D. Thompson, but that hearing was continued in order to obtain expert testimony.  R. 1050-54.  On July 10, 2007, Dr. Gail Lehman, Ph.D., a non-examining psychologist, who performed a medical records review, provided testimony at a supplemental hearing regarding Claimant's mental impairments and functional limitations.  R. 1058-1103.  At the hearing, ALJ Thompson completed a hand-written Medical Source Statement of Ability to Do Work-Related Activities (Mental) ("Exhibit 56F") based upon Dr. Lehman's testimony.  R. 1039-41.[3]  A second supplemental hearing was held on October 18, 2007 (R. 1115-56) and, on March 18, 2008, the ALJ issued a third decision finding Claimant not disabled from February 28, 2001 through March 18, 2008 (the "Third ALJ Decision").  R. 614-27.

In the Third ALJ Decision, based largely upon Dr. Lehman's opinions, ALJ Thompson found that Claimant lacked the residual functional capacity (the "RFC") to sustain even sedentary work on a regular basis "due to her symptom-related limitations which resulted in a substantial loss of ability to function in all areas of mental work-related activities."  R. 619.  Thus, ALJ Thompson determined that Claimant was disabled.  R. 619-21.  However, ALJ Thompson also concluded that if Claimant stopped engaging in substance abuse, the Claimant would retain an RFC that would permit her to perform other work existing in the national economy.  R. 621-26. Since the Claimant would not be disabled if she stopped substance abuse, ALJ Thompson concluded that the Claimant's substance abuse disorder was a material factor in the determination of disability and, therefore, pursuant to 20 C.F.R. § 416.935, Claimant was not disabled from February 28, 2001 through March 18, 2008.  R. 626-27.

---

[3] For ease of reference, the undersigned has defined the Medical Source Statement of Ability to Do Work-Related Activities (Mental) as "Exhibit 56F" because that is the citation used by ALJs Thompson and the ALJ in their respective decisions (R. 619, 625, 1201), as well as the Claimant's counsel in the January 14, 2015 hearing (R. 1380).

In the Third ALJ Decision, ALJ Thompson noted the following with respect to Dr. Lehman's testimony:

> Dr. Lehman testified that she had reviewed the entire medical record and had concluded that the claimant's mental impairments, including her substance abuse disorder, have resulted in "moderate to marked" limitations with her ability to: understand, remember and carry out simple and complex instructions; make judgments on simple and complex work-related decisions; interact appropriately with the public, supervisors and co-workers; respond appropriately to usual work situations and to changes in routine work setting (Exhibit 56F).   "Marked "is defined as a serious limitation where the ability function is severely limited but not precluded, while "moderate" is defined as a moderate limitation where the ability to function is still satisfactory (Exhibit 56F).

R. 619.   Thus, the Third ALJ Decision clearly states that <u>Dr. Lehman testified that Claimant's mental impairments, taking into consideration Claimant's substance abuse disorder, result in moderate to marked functional limitations</u> in all areas, <u>including the ability to comprehend and carry out simple work related instructions and tasks</u>.   R. 619.   ALJ Thompson further noted that Dr. Lehman testified that "without her abuse limitations, the [C]laimant would have no limitations in her ability to: understand, remember, and carry out simple instructions; [and] make judgments on simple work-related decisions."   R. 625 (citing Exhibit 56F).   Therefore, without considering Claimant's substance abuse disorder, the Third ALJ Decision states that Claimant would have no limitations in comprehending and carrying out simple instructions.   R. 625 (citing Exhibit 56F).

Claimant requested review from the Appeals Council and, on September 12, 2008, the Appeals Council declined to review the ALJ's decision.   R. 588-609.   However, despite numerous requests, Claimant never received a copy of the Appeals Council's September 12, 2008 decision until December 19, 2012, when the Appeals Council issued a supplemental decision.   R. 1157-64.   On January 22, 2013, Claimant filed a timely complaint in the District Court challenging the Third ALJ Decision.   *Quanstrom v. Colvin*, No. 6:13-cv-120-Orl-PAZ, Doc. No.

1 (M.D. Fla. Jan. 22, 2013).   On November 26, 2013, the Court entered an order reversing and remanding the Third ALJ Decision to the Commissioner for further proceedings (the "Third Remand").   *Id.* at Doc. No. 27; R. 1205-17.   In the Third Remand, the Court found that ALJ Thompson's conclusion that Claimant continued abusing drugs after completing a July 2005 rehabilitation program lacked support in the record and, therefore, the ALJ's conclusion that Claimant's substance abuse disorder contributed to her disability throughout the relevant period was erroneous.   R. 1215-16.   Thus, the Court remanded the case to the Commissioner "to sort out the timeline of the [Claimant's] impairments in conjunction with her record of substance abuse."   R. 1215.

On January 14, 2015, more than one year after the Third Remand, the instant ALJ held a fourth hearing on Claimant's application for SSI benefits.   R. 1378-1403.   On April 13, 2015, the ALJ issued the decision at issue (the "Fourth ALJ Decision"), finding Claimant not disabled from February 28, 2001 through August 3, 2011.   R. 1190-1204.   On June 17, 2015, Claimant filed the complaint in this action.   Doc. No. 1.[4]   Thus, based on the foregoing, over the past fifteen (15) years Claimant has successfully obtained remand on four (4) occasions.

---

[4]   On November 18, 2013, in a separate application for SSI benefits, an ALJ issued a decision finding Claimant not disabled from August 4, 2011 through the date of the ALJ's decision (the "Jacksonville ALJ Decision").   *See Quanstrom v. Colvin*, 3:14-cv-546-J-BJD-JRK, Doc. No. 18 at 1-2 (M.D. Fla. June 12, 2015).   Claimant appealed that decision to the District Court and, on July 27, 2015, judgment was entered reversing and remanding the case for further proceedings (the "Jacksonville Remand").   *Quanstrom*, 3:14-cv-546-J-BJD-JRK, Doc. No. 20 (M.D. Fla. July 27, 2015).   In the Jacksonville Remand, the Court found that the ALJ erred by failing to properly consider the mental health evidence of record, including Dr. Thomas Eisenberg's October 10, 2011 opinion.   *Id.* at Doc. No. 18 at 13-14.

## II.     THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.   *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).   In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity.   At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.   At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience.   If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work.   At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted).   The steps are followed in order.   If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## III.     STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).   Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"   *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## IV.   ANALYSIS.

Claimant alleges that the Fourth ALJ Decision (R. 1190-1204) is not supported by substantial because the ALJ erred with respect to the opinions of Drs. Lehman, Boger, Miller, and Thomas Eisenberg.   Doc. No. 15 at 12-35.

### A.  Dr. Lehman.

Claimant argues that the ALJ erred in addressing Dr. Lehman's opinion by: (1) relying on Exhibit 56F, which she contends is inconsistent with Dr. Lehman's testimony; (2) mischaracterizing Dr. Lehman's testimony; and 3) "cherry picking" portions of Dr. Lehman's opinion that support the ALJ's RFC while ignoring portions of the opinion that contain more restrictive limitations.   Doc. No. 12-23.   Upon review, the undersigned agrees that the ALJ materially mischaracterized Dr. Lehman's opinion.   R. 1201.   In order to fully understand the pervasiveness of those errors it is necessary to trace the ALJ's statements regarding Dr. Lehman's opinions.

The ALJ stated the following:

> As for other opinion evidence, [the ALJ] considered the medical source statement of medical expert Gail Lehman, which was transcribed from her hearing testimony via telephone conference on July 7, 2007 (Exhibit 56F).   [1] Dr. Lehman concluded that the

claimant had no limitation in the ability to understand, remember, and carry out simple instructions; on the other hand, the claimant had moderate to marked limitation in all other areas of social functioning and the ability to follow complex instructions and make work-related decisions that was effective. [2] In her testimony and [Exhibit 56F], Dr. Lehman indicated that the claimant's prescription drugs, alcohol, and substance drug/alcohol abuse were incorporated while assessing the claimant's limitations in each category. [3] [the ALJ] accorded Dr. Gail's [sic] opinion only partial weight because in her assessment, the claimant's history of [Substance Abuse Disorder] would be considered material as a finding of "marked to moderate" would suggest. However, [the ALJ] concludes that the claimant's history of [Substance Abuse Disorder] is not material. Specifically, the claimant's symptoms fluctuated because of personal problems, as well as [substance abuse disorder]. While treatment notes show that the claimant continued to experience mental health symptoms even during the time she abused prescriptions or substances, her mental status findings were not consistent with disabling symptoms, as detailed herein. Furthermore, the claimant admitted that she stopped medication and counseling for about a year and half. The record evinces that when the claimant resumed treatment with medication therapy, her mental status examination stabilized. Moreover, when she stopped abusing prescriptions and drugs, she no longer required recurrent psychiatric hospitalizations. For the reasons aforementioned, Dr. Lehman's opinion was accorded partial weight, however, [4] [the ALJ] notes that even with the history of [substance abuse disorder], Dr. Lehman still concluded that the claimant was note [sic] limited in the ability to understand, remember, and carry out simple instructions, which is consistent with the established [RFC] (Exhibit 56F). [5] Accordingly, the claimant's drug abuse had a negative effect on her mental status but it did not preclude unskilled work activity as detailed herein.

R. 1201(citing Exhibit 56F; bracketed numbers added). Thus, the ALJ made the following comments and findings with respect to Dr. Lehman's opinion: (1) Dr. Lehman provided a single opinion, finding that Claimant has no limitations in the ability to understand, remember and carry out simple instructions, but she is moderately to markedly limited with respect to all other area; (2) Dr. Lehman incorporated Claimant's substance abuse disorder into her opinion at every step; (3) Dr. Lehman's opinion is only entitled to partial weight because, contrary to Dr. Lehman's opinion, Claimant's substance abuse is not material; (4) Dr. Lehman opined that Claimant retains

the functional capacity to understand, remember, and carry out simple instructions even when taking into account Claimant's substance abuse disorder; and (5) Dr. Lehman's opinion is consistent with the ALJ's finding that Claimant can perform unskilled work.   R. 1201. Incredibly each one of these comments and findings are patently flawed.[5]

First, the ALJ's comment that Dr. Lehman provided a single opinion, finding that Claimant has no limitations in understanding, remembering, and carrying out simple instructions is not accurate.   Dr. Lehman unequivocally offered two opinions.   R. 1092-98.   ALJ Thompson asked Dr. Lehman to consider two distinct scenarios when opining as to the Claimant's functional limitations.   R. 1092, 1095.   The ALJ first instructed Dr. Lehman to "not consider the issues of substance abuse or any types of prescription drug abuse" and to "only consider the bipolar II problems and maybe the history of borderline personality disorder" when answering the ALJ's questions (the "First Scenario").   R. 1092 (emphasis added).    In the First Scenario, Dr. Lehman opined that Claimant's bipolar disorder and borderline personality disorder result in: no functional limitations in terms of understanding, remembering and carrying out simple instructions; moderate limitations in the ability to make judgments about simple instructions and unskilled tasks, as well as in understanding, remembering, and carrying out complex instructions; moderate to marked limitations in the ability socialize with co-workers, supervisors, and the general public; and moderate to marked limitations in the ability to respond appropriately to normal changes in routine work settings.   R. 1092-95.   Thus, Dr. Lehman opinioned that if one does not consider Claimant's substance abuse disorder, the Claimant is capable of understanding, remembering, and carrying out simple instructions or performing unskilled work.   R. 1092-95.

---

[5] Inextricably, the Commissioner maintains that the ALJ accurately characterized Dr. Lehman's opinion.   Doc. No. 15 at 21.

Next, ALJ Thompson asked Dr. Lehman to consider those same functional areas, but with the inclusion of any limitations resulting from Claimant's substance abuse disorder (the "Second Scenario").   R. 1095.   In the Second Scenario, Dr. Lehman testified that the combined effect of Claimant's bipolar disorder, borderline personality disorder, and substance abuse disorder result in: <u>moderate to marked limitations in the ability to understand, remember, carry out and make judgments about simple instructions and tasks</u> (R. 1095); moderate to marked limitations in the ability to understand, remember and carry out complex instructions (R. 1095-96); marked limitations in the ability to make judgments about complex work-related instructions (R. 1096); and marked limitations in all areas of socialization (R. 1096).   Thus, when Claimant's substance abuse disorder <u>is</u> included, Dr. Lehman testified Claimant is moderately to markedly limited in the ability to understand, remember and carry out simple instructions and, therefore, she cannot perform unskilled work.   In fact, when Claimant's substance abuse disorder is included, Dr. Lehman expressly opined that the combined effect of Claimant's bipolar disorder, borderline personality disorder and substance abuse disorder meet the criteria for Listing 12.09.   R. 1096.[6] Accordingly, the ALJ's initial comments regarding Dr. Lehman's testimony are materially inaccurate.

Second, as set forth above, Dr. Lehman did not consider or include Claimant's substance abuse disorder throughout every functional category because ALJ Thompson specifically instructed that she not consider that disorder in the First Scenario.   R. 1092.   Thus, the ALJ's

---

[6] Dr. Lehman further stated that Claimant needs "a long-term treatment program" and her out-patient treatment is like "band aids for a problem like hers."   R. 1097.   Dr. Lehman also concluded: "And I know this lady probably doesn't want to leave her family, but the best bet for this person is a long-term treatment program to get her off the opiates, to get her handling the pain, to get her some dialectical behavioral therapy for her borderline personality disorder . . . [a]nd then also to get her stabilized on some kind of medication regime that's . . . dictated by someone who really understands medications . . . and can put her on the right combination . . . to handle the mood problems along with the symptomatology of borderline personality."   R. 1097-98.

finding that Dr. Lehman considered Claimant's substance abuse disorder throughout her opinion is plainly wrong.   R. 1201.

Third, the ALJ's statements concerning why she only gives partial weight to Dr. Lehman's opinion are confusing both factually and legally.   R. 1201.   Partial weight is given to Dr. Lehman's opinion because she testified that Claimant's substance disorder is material, but the ALJ considered Claimant's substance abuse disorder not material.   R. 1201.   While Dr. Lehman did testify that the disorder was "a material factor in her inability to work," it is wholly unclear why that would lead the ALJ to give Dr. Lehman's opinion only partial weight.   Whether a claimant's substance abuse disorder is a material factor in the claimant's inability to work only enters the sequential evaluation analysis if the ALJ determines that the claimant is, in fact, disabled at step-five.   20 C.F.R. § 416.935.   If the claimant is disabled and there is evidence of substance abuse, the ALJ must then consider whether the substance abuse is a "factor material to the determination of disability."   20 C.F.R. § 416.935(a).   In this case, in determining the Claimant's RFC, the ALJ specifically "concludes that the claimant's history of [substance abuse disorder] is not material," and the ALJ utilizes that conclusion to reduce the weight given to Dr. Lehman's opinion. R. 1201. The ALJ's actions here are especially confusing because: the determination of materiality is not made at the RFC stage, but only after claimants have been found to be disabled; and the ALJ's determination that Claimant's substance abuse disorder is "not material" would, if made at the right step under the regulations, result in a fully favorable decision.   R. 1201; 20 C.F.R. §§ 416.935(b)(2)(ii) (If substance abuse disorder is not material, the claimant is disabled). [7] Accordingly, the ALJ's decision to afford only partial weight to Dr. Lehman's opinion because

---

[7] The undersigned notes that ALJ Thompson found Claimant to be disabled, but not entitled to benefits because Claimant's substance abuse disorder was found to be material.   R. 620-27.   This Court reversed the finding of materiality and remanded for further consideration.   R. 1215-16.

Claimant's substance abuse disorder is not material, is not supported by substantial evidence and fails to apply the correct legal standards.

Fourth, the ALJ's representation that Dr. Lehman opined that the Claimant could understand, remember, and carry out simple instructions even when including her substance abuse disorder is wholly inaccurate.   R. 1201.   Dr. Lehman unequivocally opined that Claimant would have moderate to marked limitations in the ability to understand, remember, and carry out simple instructions if Claimant's substance abuse disorder is included in the analysis.   R. 1095.   Finally, the ALJ's conclusion that Dr. Lehman opinion supports a finding that Claimant can perform unskilled work even with her substance abuse misrepresents the opinion because Dr. Lehman opined that Claimant met the requirements of Listing 12.09.   R. 1096, 1201.   Accordingly, the ALJ mischaracterized Dr. Lehman's opinion in nearly every material respect.

Due to the nature and scope of the ALJ's mischaracterizations regarding Dr. Lehman's opinion, the undersigned concludes that the ALJ's final decision is not supported by substantial evidence and the ALJ failed to apply the correct legal standards with respect to the materiality of Claimant's substance abuse disorder.   *See Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 665 (11th Cir. 2010) (unpublished) (misstatement of fact "may constitute harmless error if the ALJ applies the proper legal standard."); *Washington v. Astrue*, No. 8:08-CV-1614-T-27GJK, 2009 WL 2949034, at *14 (M.D. Fla. Sept. 14, 2009) (single erroneous statement does not require remand). *But see White v. Comm'r of Soc. Sec.*, No. 6:09-cv-1208-Orl-28GJK, 2010 WL 3467413, at *15 (M.D. Fla. Aug. 3, 2010) (misstatement of fact not harmless error when it substantially affects ALJ's ultimate conclusion).   After more than fourteen (14) years of failed decisions by the Commissioner, it is simply inexcusable that any ALJ would so thoroughly misrepresent a critical piece of medical opinion evidence, especially when Claimant's counsel explicitly directed the ALJ

to Dr. Lehman's opinion and requested that the ALJ review it before reaching a decision in this case.   R. 1380-81, 1397.   Accordingly, for all of the above reasons, it is **RECOMMENDED** that the Court find the Fourth ALJ Decision contains mischaracterizations of critical opinion evidence, is not supported by substantial evidence, and fails to apply the correct legal standards to the materiality of Claimant's substance abuse disorder.

## A.  Other Issues.

As set forth above, Claimant argues that the ALJ also erred by failing to state with particularity the weight given to Dr. Eisenberg's opinion and by giving great weight to the opinions of Drs. Boger and Miller.   Doc. No. 15 at 23-35.   The ALJ's errors with respect to Dr. Lehman's opinions are dispositive, but because the ALJ also erred with respect to the remaining issues, the undersigned will briefly discuss them.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability.   In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement constitutes an opinion, which requires the ALJ to state with particularity the weight given to it and the reasons therefor.   *Id.* at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).   "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

On October 10, 2011, Dr. Thomas Eisenberg provided the following medical opinion: "[Claimant] is severely and persistently mentally ill. It is my recommendation that [she] is in need of ongoing intensive case management, structured housing and/or substance abuse treatment at this time in order to prevent decompensation that could lead to state hospitalization." R. 1317. Dr. Eisenberg's opinion, while offered two months after the time period at issue, is consistent with Dr. Lehman's recommendation for intensive treatment for Claimant's Substance Abuse Disorder, bipolar disorder, and borderline personality disorder. *Compare* R. 1317 *with* R. 1097-98. The Fourth ALJ Decision contains no mention of Dr. Eisenberg's opinion. R. 1190-1204. While the particular weight afforded to any medical opinion lies within the ALJ's province, the ALJ must state with particularity the weight given to every medical opinion and the reasons therefor. *Sharfarz*, 825 F.3d at 279. The ALJ's failure to do so here with respect to Dr. Eisenberg's opinion constitutes reversible error. *Winschel*, 631 F.3d at 1179.[8]

As for the opinions the non-examining physicians, Drs. Boger and Miller (R. 360-95), their opinions were offered fourteen (14) years before the Fourth ALJ Decision and they did not consider significant portions of this record, including Claimant's three periods of decompensation. Other than the fact the ALJ chose to incorporate their opinions into her RFC (R. 1200), the Fourth ALJ Decision fails to provide any explanation as to why such remote opinions accurately reflect Claimant's functional limitations over the past fourteen (14) years. Due to all the ALJ's errors in weighing the medical opinions, the undersigned finds that the ALJ's decision to give the opinions of Drs. Boger and Miller controlling weight is not supported by substantial evidence.

---

[8] Notably, the ALJ in the Jacksonville Remand made the same error. *Quanstrom*, No. 3:14-cv-546-J-BJD-JRK, Doc. No. 18 at 13-14 (M.D. Fla. July 12, 2015) (noting ALJ must state with particularity the weight given to Dr. Eisenberg's opinion).

Based on the foregoing, it is **RECOMMENDED** that the Court further find the ALJ erred with respect to the opinions of Drs. Eisenberg, Boger, and Miller.

## V.   <u>REMEDY</u>.

Claimant requests remand for an award of benefits arguing that she has suffered an injustice.  Doc. No. 15 at 35-38.[9]   Claimant argues that given the fourteen (14) year history of this SSI claim coupled with the current errors in the Fourth ALJ decision, some of which were directly brought to the ALJ's attention, Claimant has suffered an injustice.   Doc. No. 15 at 36-37. The Commissioner does not address Claimant's assertion of an injustice, but simply states in a footnote that if the case be remanded, it should be for further proceedings.   Doc. No. 15 at 38 n.8.

Having carefully considered Claimant's argument, the lengthy history of this case, as well as the nature, extent and persistence of the errors in this case, the undersigned agrees that Claimant has suffered an injustice and another remand for further proceedings would only exacerbate that injustice.    There is no just reason why a proper decision on the merits that accurately characterizes, considers, and weighs the medical evidence regarding Claimant's mental impairments, which is supported by substantial evidence, could not have been issued in the past fifteen years.    The errors committed by the ALJ in this case, as well as each of the prior remands, include, but are not limited to failing to follow the correct legal framework in SSI cases (the First Remand, *supra* pp. 2-3), failing to follow the unequivocal directives of the Appeals Council on remand (the Second Remand, *supra* pp. 3-4), and failing to provide Claimant with notice of the Appeals Council's decision for more than four years (the Third Remand, *supra* pp. 5-6).   Indeed, the Commissioner continues to err with respect to Claimant's SSI claims beyond August 3, 2011.

---

[9] Claimant also argues that an award of benefits is appropriate because Claimant is disabled beyond a doubt.   Doc. No. 15 at 36.   However, given the longitudinal record of erroneous ALJ decisions and the conflicting nature of the medical record, the undersigned cannot conclude Claimant is disabled beyond at doubt.

*See Quanstrom*, No. 3:14-cv-546-J-BJD-JRK, Doc. No. 18 at 1-14 (M.D. Fla. July 12, 2015). Given the entire record and history of this case, the undersigned finds that Claimant has suffered a grave injustice.  *See Walden*, 672 F.2d at 840 ("Due to the perfunctory manner of the hearing, the quality and quantity of errors pointed out, and the lack of substantial evidence to support the ALJ's decision, this court is of the opinion the [claimant] has suffered an injustice."). [10] According, it is **RECOMMENDED** that the case be **REVERSED and REMANDED for an award of benefits from February 28, 2001 through August 3, 2011**.

VI.     <u>CONCLUSION.</u>

      For the reasons stated above, it is **RECOMMENDED** that the Court:

1.  **REVERSE** and **REMAND** the final decision of the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), **for the Commissioner to calculate an award of benefits from February 28, 2001 through August 3, 2011**; and

2.  Direct the Clerk to enter judgment in favor the Claimant and against the Commissioner consistent with the above findings and direct the Clerk to close the case.

<u>**NOTICE TO PARTIES**</u>

      A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

---

[10] The undersigned has rarely seen a decision so riddled with mischaracterizations of critical opinion evidence, especially when that opinion evidence has been brought to the attention of the ALJ by the claimant's counsel.   Given the history of the case and the present errors, there is no reason to believe that a remand for further proceedings would produce a final decision supported by substantial evidence and which applied the correct legal standards.

Recommended in Orlando, Florida on June 23, 2016.


_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE


Copies to:
Presiding District Judge
Counsel of Record